UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA,

        Plaintiff;

v().

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT,

        Defendant.

Civil Action No. 3-24-cv-722-BJB

Electronically Filed

## COMPLAINT

1.    The United States of America brings this action under 34 U.S.C. § 12601 (Section 12601), Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d (Title VI), the Omnibus Crime Control and Safe Streets Act of 1968, 34 U.S.C. § 10228 (Safe Streets Act), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134 (ADA), against the Louisville/Jefferson County Metro Government, including the Louisville Metro Police Department, to remedy a pattern or practice of conduct that deprives persons of rights, privileges, and immunities secured and protected by the Constitution and laws of the United States.

### JURISDICTION, VENUE, AND STANDING

2.    The Court has jurisdiction over this action, under 28 U.S.C. §§ 1331, 1345, and 2201.

3.    Venue is proper in the Western District of Kentucky, under 28 U.S.C. § 1391(b), because Defendant is located in the Western District of Kentucky and events giving rise to this claim occurred in Louisville, within the District.

4. The United States is authorized to initiate this action under Section 12601, Title VI, the Safe Streets Act, and Title II of the ADA.

5. The United States is authorized to enforce Section 12601 by filing suit against a state or local government to eliminate a pattern or practice of conduct by law enforcement officers that deprives persons of rights, privileges or immunities secured or protected by the Constitution or federal law.

6. The United States is authorized to enforce Title VI, which prohibits discrimination on the basis of race, among other bases, in any program or activity receiving federal financial assistance.

7. The United States is authorized to enforce the Safe Streets Act, which prohibits discrimination on the basis of race, among other bases, in any program or activity receiving federal financial assistance.

8. The United States is authorized to enforce Title II of the ADA, which prohibits discrimination against, and requires reasonable modifications to avoid discrimination against, individuals with disabilities.

9. The United States is authorized to seek declaratory and injunctive relief under Section 12601, Title II of the ADA, Title VI, the Safe Streets Act, and 28 U.S.C. §§ 2201 and 2202.

10. All conditions precedent to the filing of this Complaint have been satisfied. Fed. R. Civ. P. 9(c)

**PARTIES**

11. Plaintiff is the United States of America.

12. Defendant Louisville/Jefferson County Metro Government (Louisville Metro) is a consolidated local government (having the status of both county and city of first class) located in the

Commonwealth of Kentucky.

13. Louisville Metro is a governmental authority within the meaning of Section 12601.

14. Louisville Metro is a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

15. Louisville Metro is responsible for funding its agencies and is responsible for their acts or omissions, including its primary law enforcement agency, Louisville Metro Police Department (LMPD), and its emergency dispatching agency, Louisville Metro Emergency Services.

## FACTUAL ALLEGATIONS

16. On April 26, 2021, the United States announced that it would conduct a pattern-or-practice investigation into Louisville Metro and LMPD.

17. On March 8, 2023, after a thorough investigation, the United States issued a Findings Report, which is attached and incorporated by reference as Exhibit A. The Findings Report served as notice to Louisville Metro and LMPD that they were in violation of Section 12601, Title VI, the Safe Streets Act, and Title II of the ADA.

18. Louisville Metro and LMPD engages in a pattern or practice of conduct that violates the Constitution and federal laws. These violations include the following:

    a. LMPD uses excessive force in violation of the Fourth Amendment;

    b. LMPD conducts unreasonable searches and seizures based on invalid residential search warrants in violation of the Fourth Amendment;

    c. LMPD unreasonably executes residential search warrants without knocking and announcing in violation of the Fourth Amendment;

    d. LMPD's street enforcement activities violate the Fourth Amendment;

  e. LMPD unlawfully discriminates against Black people in its enforcement activities, in violation of Title VI, the Safe Streets Act, and their implementing regulations;

  f. LMPD responds to protected speech against police action in violation of the First Amendment; and

  g. Louisville Metro and LMPD unlawfully discriminate against people with behavioral health disabilities in violation of the Americans with Disabilities Act.

19. These violations of the Constitution and federal law are driven by Louisville Metro and LMPD's systemic deficiencies in policies, training, supervision, and accountability structures. Defendant has been aware of these challenges for many years but has not taken adequate steps to comply with the Constitution and federal law.

### I. Use of Excessive Force

20. LMPD engages in a pattern or practice of using force that is objectively unreasonable under the totality of the circumstances, including the threat posed by the subject and the severity of the alleged underlying offense, in violation of the Fourth Amendment.

21. LMPD routinely uses force disproportionate to the threat or resistance posed. Officers use force simply because people do not immediately follow their orders, even when those people have not had a sufficient opportunity to comply, are not physically resisting, or are not posing a threat to anyone.

22. LMPD uses force to punish or retaliate against people challenging officers' authority.

23. LMPD uses dangerous and potentially lethal neck restraints against people who pose no threat. For example, LMPD officers use neck restraints against people who are not resisting or

have already been handcuffed or subdued. Officers do not report neck restraints and supervisors do not review them for reasonableness.

24. LMPD deploys police dogs against people who pose no threat and allows dogs to continue biting after the people surrender.

25. LMPD uses tasers against people who are not a threat, including using tasers against people who have submitted to an officer or are already restrained.

26. LMPD uses force such as takedowns, strikes, and other bodily force, against people posing no threat to officers.

27. LMPD unnecessarily escalates encounters, leading to excessive force, including deadly force.

28. LMPD's weak oversight contributes to its use of excessive force. For example, LMPD's first-line supervisors do not conduct thorough investigations of uses of force by officers. Supervisors do not meaningfully review and assess each use of force in an incident. Their reports omit important facts and rarely analyze tactics, including whether officers could have avoided a use of force through better tactics.

**II.     Invalid Residential Search Warrant Applications**

29. LMPD engages in a pattern or practice of conducting searches of residences based on invalid search warrants, in violation of the Fourth Amendment.

30. LMPD's residential search warrant applications frequently lack the specificity and detail necessary to establish probable cause for the search.

31. LMPD's applications are typically overly broad and fail to establish probable cause for searching everything and everyone listed in the warrant.

32. LMPD's applications improperly rely on information from confidential informants to demonstrate probable cause without establishing the veracity, reliability, and basis of knowledge of the confidential informant or independently corroborating the confidential informant's statements.

33. The inadequacies of LMPD's residential search warrant applications are caused by poor supervision and oversight. For example, LMPD does not ensure that a supervisor or a legal advisor verify that probable cause exists before seeking a residential search warrant.

### III. Unconstitutional Executions of Residential Search Warrants

34. LMPD engages in a pattern or practice of unreasonably executing residential search warrants without first knocking and announcing, in violation of the Fourth Amendment.

35. LMPD executes warrants at unnecessarily late times and without taking appropriate measures to protect public safety. They do this without court authorization or exigent circumstances that could merit such unreasonable executions.

36. LMPD's weak oversight contributes to this pattern or practice of unreasonably executing residential search warrants. For example, LMPD fails to hold officers accountable for failing to complete risk matrices, record warrant executions on body-worn camera, and complete thorough internal reporting assessing the execution.

### IV. Unconstitutional Stops, Searches, and Arrests

37. LMPD engages in a pattern or practice of making unlawful stops, searches, and arrests, in violation of the Fourth Amendment.

38. LMPD stops and frisks people without reasonable articulable suspicion.

39. LMPD searches people without probable cause, including during unreasonably lengthy and intrusive traffic stops.

40. LMPD unlawfully searches and seizes the belongings of people experiencing homelessness.

41. LMPD conducts warrantless searches of private homes without probable cause.

42. LMPD coerces people into acquiescing to searches instead of obtaining voluntary consent. For example, officers ask for consent for a frisk or search immediately before or even during a frisk.

43. LMPD detains people for longer than necessary to complete traffic stops, unlawfully prolonging detentions in violation of the Fourth Amendment.

44. LMPD unlawfully arrests and detains people. For example, officers arrest people for engaging in activity protected by the First Amendment and for conduct that does not violate the law.

**V.     Discriminatory Policing**

45. LMPD engages in a pattern or practice of discrimination through its use of enforcement strategies and other practices that violate Title VI and the Safe Streets Act.

46. Title VI and the Safe Streets Act prohibit discrimination on the basis of race, among other bases, in any program or activity receiving federal financial assistance. This prohibition bars police practices that discriminate against Black people.

47. While engaged in the conduct described in this Complaint, Defendant received federal financial assistance from the United States Department of Justice, either directly or through another recipient of federal financial assistance.

48. Defendant was notified that as a condition of receiving federal financial assistance, it must comply with all requirements imposed by Title VI and, where applicable, the Safe Streets Act, and their corresponding regulations. The assurances signed by the primary recipients, including but not limited to Louisville Metro, bind subsequent recipients, including LMPD, to which it disburses

the funds. Louisville Metro is responsible for ensuring that LMPD complies with Title VI and, where applicable, the Safe Streets Act, and their implementing regulations.

49. While engaged in the conduct described in this Complaint, Defendant received funds from the U.S. Department of Justice Office of Justice Programs (OJP) and the Office for Community Oriented Policing Services (COPS). Those funds are subject to the requirements of the Safe Streets Act.

50. LMPD treats Black people differently than white people who engage in the same or similar conduct. This discriminatory treatment is the result of LMPD's decision to concentrate low-level traffic enforcement in predominantly Black neighborhoods, as well as LMPD's selective enforcement against Black people throughout Louisville.

51. LMPD's enforcement practices disproportionately and adversely affect Black people.

52. LMPD disproportionately stops and cites Black drivers for minor traffic offenses, such as equipment violations and improper tags.

53. LMPD disproportionately searches Black drivers who are stopped and cited.

54. Comparing stops involving similar pre-stop behavior reveals that LMPD is more likely to search Black drivers.

55. LMPD detains Black drivers significantly longer than white drivers who are charged with the same types of violations.

56. LMPD cites or arrests Black people for marijuana possession at nearly 4 times the rate of white people, although public health data show that Black people and white people use marijuana at similar rates.

57. LMPD regularly fails to document traffic stops in Black neighborhoods and does not document searches that yield no contraband. As a result, LMPD's reported data likely understate the

actual disparities in LMPD's stops, prolonged detentions, and searches.

58. Even though Louisville Metro and LMPD knew about discriminatory policing, they adopted and maintained practices that increased the risk of discrimination. For example, LMPD's own reports repeatedly showed that Black drivers were disproportionately stopped and searched during traffic stops. Likewise, other public reports, including analyses by the Louisville Courier-Journal, showed disparities in LMPD's marijuana enforcement and other areas.

59. Despite knowing of these racial disparities, LMPD created a specialized unit that engaged in aggressive pretextual enforcement, without appropriate safeguards and supervision. LMPD called this unit the Violent Incident Prevention, Enforcement, and Response (VIPER) Unit, later rebranding the unit as the Ninth Mobile Division and the Criminal Interdiction Division. Officers in this unit engaged in repeated misconduct, including discrimination and failure to document traffic stops. LMPD also failed to respond appropriately to officers who expressed racial bias and animus against Black people.

60. LMPD's discriminatory policing practices undermine public safety. For example, LMPD's decision to concentrate traffic enforcement in Black neighborhoods cannot be explained by traffic safety needs. LMPD makes a much larger percentage of stops for minor violations in Black neighborhoods as compared to white neighborhoods with similar levels of traffic accidents. LMPD's discriminatory policing has eroded community trust, which undermines community cooperation with police investigations into violent crime.

**VI.     Unconstitutional Response to Protected Speech Against Police Action**

61. LMPD unlawfully responds to protected speech against police action, in violation of the First Amendment. For example, LMPD uses riot sticks, less-lethal munitions, and chemical agents against protesters who did no more than passively resist or disperse more slowly than officers

desired; LMPD uses force against protesters who have surrendered; and LMPD makes unlawful warrantless arrests during police protests.

62. LMPD violates the First Amendment by treating people protesting police action more harshly than those not protesting police action. LMPD engaged in this content-based discrimination before and during the 2020 protests.

63. LMPD abridged the First Amendment right to challenge police verbally during the 2020 protests.

64. LMPD violates the First Amendment by subjecting members of the press to mass arrests and retaliatory force. LMPD uses force against journalists committing no crimes, posing no safety risk, and not resisting or evading arrest.

65. LMPD abridges the First Amendment rights to challenge police verbally outside the 2020 protests. For example, LMPD officers unlawfully use force and unlawfully arrest individuals who lawfully challenge or record police action during routine police encounters.

66. LMPD's First Amendment violations are the product of deficient policy and training as well as poor planning and management of protests and demonstrations.

## VII. Discriminatory Response to Individuals with Behavioral Health Disabilities

67. Louisville Metro and LMPD engage in a pattern or practice of responding to people with behavioral health disabilities that violates Title II of the ADA.

68. As a matter of course, Louisville Metro sends LMPD officers to respond to behavioral health-related issues, even when there are no safety risks warranting a police response. Many of these calls could be safely and more effectively resolved through a response by behavioral health staff.

69. Louisville Emergency Services and MetroSafe, Louisville Metro's 911 communications center, maintain policies and practices that result in needless law enforcement responses to people with behavioral health disabilities experiencing behavioral health-related emergencies, while sending medical professionals to people experiencing medical-related emergencies.

70. Louisville Metro's practices, by and through its Agencies LMPD and Louisville Emergency Services, result in unnecessary law enforcement responses to people with behavioral health disabilities.

71. Unnecessary LMPD responses to people with behavioral health disabilities are often ineffective and harmful. LMPD officers frequently fail to engage in tactics of which they should be aware to calm people in crisis and de-escalate crises.  LMPD responses to people with behavioral health disabilities also frequently lead to use of force and avoidable arrests.

72. These practices result in people with behavioral health disabilities being excluded from participation in, and denied the benefits of, Louisville Metro's emergency response program and services. Louisville Metro denies people with behavioral health disabilities an equal opportunity to participate in or benefit from these services and does not afford equal opportunity to people with behavioral health disabilities to obtain the same result as that provided to others.

73. Louisville Metro, by and through its Agencies LMPD and Louisville Emergency Services, can make reasonable modifications to avoid discrimination against people with behavioral health disabilities, such as by expanding the criteria and capacity for its program that offers behavioral health mobile response to some calls, facilitating coordination between Louisville Metro and providers of behavioral health services in Louisville, modifying LMPD's response to people with behavioral health disabilities by improving training and establishing a specialized group of

officers, and analyzing data regarding responses to behavioral health issues to improve those responses. These reasonable modifications would not fundamentally alter Louisville Metro's emergency response system.

### VIII. Louisville Metro and LMPD's Violations of the Constitution and Federal Law Are Rooted in Systemic Deficiencies in Supervision and Accountability.

74. Defendant's deficient policies, training, supervision, and accountability systems contribute to Louisville Metro and LMPD's violations of the Constitution and federal statutes. Defendant has been on notice of these deficiencies for years but has not implemented sufficient reforms to ensure lawful public safety practices.

75. Defendant has failed to supervise officers effectively or hold them accountable for misconduct, contributing to the patterns or practices of unlawful conduct described in this Complaint.

76. LMPD fails to adequately train and supervise its officers. This deficiency manifests itself in multiple ways, including: a failure to guide officer activity through effective policies and training; a failure to collect and analyze reliable data to supervise officer enforcement activities; and the lack of a meaningful early intervention system, to identify officers who may benefit from additional training or other guidance, and ensure that they do not commit constitutional violations.

77. LMPD's accountability systems are not sufficient to deter misconduct. LMPD does not consistently accept, classify, investigate, adjudicate, and document complaints of misconduct.

78. Together, these failures prevent LMPD from deterring, identifying, and correcting misconduct that contributes to a pattern or practice of violating the Constitution and federal laws.

## FIRST CLAIM FOR RELIEF

### DEFENDANT'S PATTERN OR PRACTICE OF CONDUCT DEPRIVES INDIVIDUALS OF RIGHTS, PRIVILEGES, AND IMMUNITIES SECURED BY THE FIRST AND FOURTH AMENDMENTS, TITLE II OF THE ADA, TITLE VI, AND THE SAFE STREETS ACT, IN VIOLATION OF SECTION 12601

79. The United States re-alleges and incorporates by reference all the allegations set forth in Paragraphs 1-78.

80. The First Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides in pertinent part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble."

81. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

82. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

83. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Defendant received and continues to receive Federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

84. The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this chapter." Defendant received and continues to receive funds from the U.S. Department of Justice that are subject to the Safe Streets Act.

85. By the actions set forth above, Defendant and its agents, including LMPD officers and Louisville Emergency Services' MetroSafe employees, have engaged and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First and Fourth Amendments to the United States Constitution, Title II of the ADA, Title VI of the Civil Rights Act of 1964, and the Safe Streets Act, in violation of 42 U.S.C. § 12601.

86. Unless restrained by this Court, Defendant will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm to the people of Louisville/Jefferson County.

## SECOND CLAIM FOR RELIEF

### DEFENDANT'S LAW ENFORCEMENT ACTIVITIES VIOLATE TITLE VI

87. The United States re-alleges and incorporates by reference all the allegations set forth in Paragraphs 1-86.

88. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

89. Defendant received and, on information and belief, continues to receive Federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

90. Defendant has engaged in law enforcement practices, including stops, searches, arrests, and uses of force, that discriminate against Black people and are unnecessary to achieve non-discriminatory objectives.

91. The United States has determined that all statutory and regulatory prerequisites for this lawsuit have been satisfied and that compliance cannot be secured by voluntary means.

92. Defendant's discriminatory law enforcement practices violate Title VI.

## THIRD CLAIM FOR RELIEF

### DEFENDANT'S LAW ENFORCEMENT ACTIVITIES VIOLATE THE SAFE STREETS ACT

93. The United States re-alleges and incorporates by reference all the allegations set forth in Paragraphs 1-92.

94. The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this chapter."

95. Defendant received and, on information and belief, continues to receive funds from the U.S. Department of Justice that are subject to the Safe Streets Act.

96. Defendant has engaged in a pattern or practice of law enforcement practices, including stops, searches, arrests, and uses of force, that discriminate against Black people and are unnecessary to achieve non-discriminatory objectives.

97. The United States has determined that all administrative prerequisites to this lawsuit have been satisfied and that compliance cannot be secured by voluntary means.

98. Defendant's discriminatory law enforcement practices violate the Safe Streets Act.

## FOURTH CLAIM FOR RELIEF

**DEFENDANT VIOLATES TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

99. The United States re-alleges and incorporates by reference all the allegations set forth in Paragraphs 1-98.

100. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

101. Defendant, a public entity, through the operation of its emergency response program and services, denies the benefits of this program and services to people with behavioral health disabilities and subjects people with behavioral health disabilities to discrimination.

102. Defendant could make reasonable modifications to avoid discrimination against individuals with behavioral health disabilities, but Defendant has repeatedly failed to make such modifications sufficient to avoid this discrimination.

103. The United States received a complaint of discrimination regarding the Defendant's discrimination against people with disabilities.

104. The United States has determined that all statutory and regulatory prerequisites to this lawsuit have been satisfied and that Defendant's compliance cannot be secured by voluntary means.

105. Defendant's actions constitute discrimination in violation of Title II of the ADA, 42 U.SC. § 12132, and its implementing regulations, 28 C.F.R. Part 35.

## PRAYER FOR RELIEF

106. WHEREFORE, the United States asks the Court to:

   a. Declare that Defendant, its officers, agents, and employees have engaged in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, in violation of Section 12601;

   b. Declare that Defendant, its officers, agents, and employees have violated Title VI;

   c. Declare that Defendant, its officers, agents, and employees have violated the Safe Streets Act;

   d. Declare that Defendant, its officers, agents, and employees have violated Title II of the ADA;

   e. Enjoin Defendant, its officers, agents, and employees from engaging in any of the predicate acts forming the basis of the pattern or practice of conduct and violations of Title VI, the Safe Streets Act, and Title II of the ADA;

   f. Order Defendant, its officers, agents, and employees to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described in this Complaint, and to prevent Defendant, its officers, agents, and employees from depriving persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States; and

   g. Order such other appropriate relief as the interests of justice may require.

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REGAN RUSH
Chief
Special Litigation Section

PAUL KILLEBREW
Deputy Chief
Special Litigation Section

_____
S. MEHVEEN RIAZ
DAVID G. COOPER
SURAJ KUMAR
LILY SAWYER-KAPLAN
AMY SENIER
HALEY VAN EREM
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
Telephone: (202) 514-6255

BENJAMIN S. SCHECTER
Civil Chief
Western District of Kentucky

_____
JESSICA R. C. MALLOY
CALESIA HENSON
Assistant United States Attorneys
717 West Broadway
Louisville, KY 40202
Telephone: (502) 582-5911
Jessica.Malloy@usdoj.gov

Dated: December 12, 2024

**Exhibit A**

**DOJ's March 8, 2023 Findings**