**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**
*Filed Electronically*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,<br><br>    Defendant. | Civil Action No. 3:24-CV-00722-BJB |

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR ENTRY OF CONSENT DECREE**

  Plaintiff, the United States of America, and Defendant, Louisville/Jefferson County Metro Government, (collectively "the Parties"), have agreed upon and jointly move the Court to approve and enter the attached Consent Decree as an Order of this Court. The Consent Decree would resolve litigation initiated by the United States with the concurrent filing of a Complaint pursuant to 34 U.S.C. § 12601 (Section 12601), Title VI of the Civil Rights Act of 1964 (Title VI), the Omnibus Crime Control and Safe Streets Act of 1968, 34 U.S.C. § 10228 (Safe Streets Act), and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134 (ADA). The Parties seek entry of this Consent Decree so that the comprehensive measures and goals agreed upon between the United States, Louisville/Jefferson County Metro Government ("Louisville Metro") and Louisville Metro Police Department ("LMPD") are implemented and achieved as set out within. As set forth in Sections XV.D-E of the attached proposed Consent Decree, the Parties request that the Court retain jurisdiction over the Decree for the purpose of

enforcing its terms until Louisville Metro and LMPD have achieved Substantial Compliance, as defined by the Decree, and maintained that compliance in accordance with Section XV.

In its Complaint, the United States alleges that Louisville Metro and LMPD deprive individuals of their rights under the First and Fourth Amendments to the United States Constitution, Title VI, the Safe Streets Act, and Title II of the ADA, in violation of Section 12601. The Defendant enters into this Consent Decree with the goal of further improving the policies, procedures, training, and oversight that the United States claims contribute to an alleged pattern or practice of constitutional violations and violations of federal law. The Parties agree that it is in the public interest to fully and finally resolve this matter on mutually agreeable terms without resort to protracted litigation. The Parties hereby agree and stipulate to the Court's entry of this Consent Decree in resolution of the United States' Complaint against Louisville Metro.

### I. Background

The United States Department of Justice's Civil Rights Division and the Civil Division of the United States Attorney's Office for the Western District of Kentucky opened a civil pattern-or-practice investigation of Louisville Metro and LMPD on April 26, 2021. Following the investigation, the United States issued a report detailing its investigative findings on March 8, 2023 ("Findings Report").[1] The United States found reasonable cause to believe that Louisville Metro and LMPD engage in a pattern or practice of conduct that deprives persons of rights protected by the First and Fourth Amendments to the United States Constitution, and by federal statutory law. Also on March 8, 2023, the United States, Louisville Metro and LMPD entered into an Agreement in Principle that committed the Parties to negotiate in good faith on reforms

---

[1] A copy of the Findings Report is attached to the United States' Complaint (ECF No. 1) and available at https://perma.cc/FV8H-ZZC3.

that would address the United States' findings and seek to establish sustained constitutional public safety and emergency response efforts. Following the announcement of the investigative findings and the Agreement in Principle, the Parties engaged in extensive negotiations.

Additionally, the Parties solicited and considered input from Louisville residents, LMPD employees, stakeholders, advocacy groups, and others to inform the negotiation process. The negotiations have resulted in the attached proposed Consent Decree, an agreement that identifies reforms of Louisville Metro and LMPD to address the alleged constitutional and federal statutory violations in the Complaint.

## II. Legal Standard

"[P]ublic policy generally supports a presumption in favor of voluntary settlement of litigation." *United States v. Lexington-Fayette Urb. Cnty. Gov't*, 591 F.3d 484, 490 (6th Cir. 2010) (internal quotation marks omitted). This presumption is "particularly strong" where a consent decree has been negotiated by a federal agency with "substantial expertise" in the relevant field. *Id.* at 490-91.

When considering whether to approve and enter a proposed consent decree, a district court should assess "whether the decree is fair, adequate, and reasonable, as well as consistent with the public interest." *Id.* at 489 (internal quotation marks omitted). Whether an agreement protects the public interest is a key consideration when determining whether a settlement agreement is fair, adequate, and reasonable. See *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).

## III. Discussion

The United States and Louisville Metro have entered into an agreement that is fair, adequate, reasonable, and consistent with the public interest. Moreover, the proposed Consent

Decree is the product of an investigation conducted by a federal agency with responsibility to protect the public interest and that has expertise in constitutional and effective public safety services. The proposed Decree offers a path forward to achieve lawful and effective public safety and emergency response services in Louisville.

### A. The Proposed Consent Decree Is in the Public Interest

The proposed Consent Decree before the Court is consistent with and promotes the objectives of Section 12601 and federal statutory law and is therefore in the public interest.

Section 12601 prohibits law enforcement officers from engaging in a pattern or practice of conduct "that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). Where the United States has reasonable cause to believe that a pattern or practice of unlawful conduct has occurred, Congress has authorized the United States to "initiate a civil action to obtain appropriate equitable and declaratory relief sufficient to eliminate the pattern or practice." 34 U.S.C. § 12601(b).

Title VI, together with relevant implementing regulations, prohibits discrimination on the basis of race, color, or national origin by agencies receiving federal funds or federal financial assistance. 42 U.S.C. § 2000d. The Safe Streets Act prohibits discrimination on the basis of race, color, religion, national origin, or sex in connection with certain federally-funded programs. 34 U.S.C. § 10228. The ADA prohibits discrimination on the basis of disability in all services, programs, and activities provided by State and local government entities. 42 U.S.C. §§ 12131-12134. Together, these constitutional and statutory rules provide a framework that protects the public from detrimental law enforcement practices.

The proposed Decree settles claims that arise from findings developed by the United States during a thorough investigation of Louisville Metro's and LMPD's policies, practices, and

conduct. With the full cooperation of Louisville Metro and LMPD, the United States conducted numerous onsite tours and met with hundreds of officers, community members, city leaders, and other stakeholders. The United States reviewed thousands of hours of body-worn camera footage and analyzed data and thousands of documents, including policies and training materials; internal affairs files; incident reports describing stops, searches, and arrests and uses of force; sexual assault and domestic violence case files; and databases containing information on thousands of traffic stops and other encounters. Following the investigation, the United States issued an 86-page report (ECF No. 1-1) setting forth the alleged factual basis for its conclusion that it had reasonable cause to believe that Louisville Metro and LMPD and its officers engaged in a pattern or practice of violating the Constitution and laws of the United States while engaging in specific activities.

While Louisville Metro does not concede the accuracy of the United States' findings or the claims in its Complaint, Louisville Metro voluntarily entered into negotiations with the United States to address the concerns raised by the investigation. The Court need not make any findings as to the truth or falsity of the allegations in the Complaint. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."); *United States v. Armour & Co.*, 42 U.S. 673, 682 (1971) ("Because the defendant has, by the decree, waived his right to litigate the issues raised . . . the conditions upon which he has given that waiver must be respected."); *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 (1981) (The parties do not need to admit liability, because doing so "den[ies] the parties their right to compromise their dispute on mutually agreeable terms.").

The proposed Decree is consistent with the public interest. Through the proposed Decree, Louisville Metro and LMPD are required to further develop, implement, and refine their policies, training, and practices to continue towards the goal of delivering public safety and emergency response services consistent with legal requirements. The proposed Decree sets out reform efforts to be undertaken by Louisville Metro and LMPD for the express purpose of promoting effective community engagement and oversight, effective policy guidance, improved training, closer supervision, and improved technology and resources. The Decree is designed to promote better support for officers, as well as accountability systems that will make investigations of alleged misconduct and discipline more fair, constructive, and transparent. Perhaps most importantly, the Decree seeks to foster cooperation and collaboration among LMPD and the diverse communities it serves.

The proposed Decree is appropriate in resolving the issues raised by the United States' investigative findings because voluntary compliance through a negotiated resolution and entry of a consent decree is more likely to accomplish the Parties' shared goals than will orders imposed at the end of bitter and protracted litigation. *See Akzo*, 949 F.2d at 1436 (presumption in favor of voluntary settlement). Indeed, the United States' investigation and the Parties' subsequent negotiations already have set in motion a process of reform within Louisville Metro and LMPD. Throughout this process, Louisville Metro, LMPD leadership, and many LMPD officers have expressed a desire to continuously improve the performance of LMPD in its effort to interact with and protect the safety of the community. The proposed Decree will assist both Louisville Metro as a whole and LMPD officers in achieving their goal of being the best police department possible. While the reforms in the proposed Decree may come with financial costs, these reforms serve the public interest by allowing the Parties to expeditiously work to implement and continue

improvements that will foster constitutional, lawful, and effective public safety and emergency response services for Louisville.

### B. The Consent Decree is Fair, Adequate, and Reasonable

Evaluating whether a proposed consent decree is fair, adequate, and reasonable involves weighing such factors as "the strength of plaintiff[s'] case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved," *Lexington-Fayette*, 591 F.3d at 489, as well as the decree's likely effectiveness as a vehicle for obtaining its intended purpose. *See Akzo Coatings of Am.,* 949 F.2d at 1436.

The thoroughness of the United States' investigation and outreach efforts and the Parties' subsequent negotiations provide evidence that the negotiated agreement is fair, adequate, and reasonable. For the past nine months, having received community input, Louisville Metro and the Department of Justice have worked together to ensure that a negotiated resolution could be achieved that addresses the alleged legal violations described in the United States' investigative findings. The proposed Consent Decree includes provisions that have been extensively discussed and agreed upon in an effort to create sustained and comprehensive reforms.

The Parties were represented in these negotiations by experienced counsel and officials who are deeply familiar with LMPD's policing practices, Louisville Metro's governmental structure and resources, and the investigative findings. The United States' investigation and negotiation team included experienced attorneys, who collectively have decades of experience in federal oversight of law enforcement agencies. Throughout the investigation and negotiation process, the United States consulted with subject matter experts to help assess Louisville Metro and LMPD practices and tailor the remedial measures in the proposed Consent Decree to address

the alleged violations identified. The negotiation team for Defendant also included experienced attorneys and subject matter experts. The extensive and detailed reforms in the Consent Decree are a product of the expertise of the Parties and their consultants.

Additionally, to make certain that the proposed Consent Decree remains fair, adequate, and reasonable over time, it provides for independent oversight in the form of a Monitor, selected by the Parties in consultation with the community and approved by the Court, to assess Louisville Metro's and LMPD's efforts at implementing the Consent Decree. The Monitor will also provide technical assistance to help ensure that efforts are carried out efficiently and successfully and that Louisville Metro and LMPD are building the necessary capacity to effectively monitor themselves in the future. The Monitor will save time and resources of both the Parties and the Court, provide the public with an objective and independent assessment of the status of the Consent Decree's implementation, and determine whether this implementation is achieving the underlying objective of providing lawful public safety and emergency response services in Louisville.

The proposed Decree also includes numerous provisions that allow for flexibility over time. The Decree allows for modification of its provisions upon agreement of the Parties and approval by the Court, so that the Parties and Court can adjust the required reforms if there are more effective ways to achieve the Decree's objectives. The Decree also requires the Monitor to conduct a comprehensive reassessment two-and-a-half years into the reform process, and every two years thereafter, to evaluate the Decree's overall implementation and whether any course correction is necessary in light of changed circumstances or unanticipated impact (or lack of impact) of any Decree requirements. At the five year mark, the Decree requires termination unless the United States demonstrates that Louisville Metro has failed to attain or maintain

Substantial Compliance. These provisions will ensure that the Decree remains reasonable and flexible throughout its duration, which should only be as long as is necessary to achieve and sustain compliance.

Finally, the proposed Decree is structured to enable Louisville Metro and LMPD to develop the capacity to self-assess whether they have achieved the objectives of the Decree. This self-assessment process will begin immediately upon entry of the Decree, which provides that Louisville Metro and LMPD (not the Monitor) will conduct the first evaluations of certain sections of the Decree. In addition, Louisville Metro and LMPD (not the Monitor) will take the lead in drafting plans that will guide the work of the Parties and the Monitor in implementing the Decree. This early authority will empower Louisville Metro and LMPD to push the ongoing reform process forward as they develop the capacity to conduct additional self-assessments of their compliance with other sections of the Decree, and to maintain the practice of self-assessment and improvement of performance after termination of the Decree. Prioritizing this from the outset enables Louisville Metro and LMPD to build a solid foundation for long-term success, mitigate risks, foster a strong ethical culture, and enhance operational efficiency.

## IV.  Conclusion

For the foregoing reasons, the Parties respectfully move this Court to enter the Consent Decree in its entirety as an Order of the Court.

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REGAN RUSH
Chief
Special Litigation Section

PAUL KILLEBREW
Deputy Chief
Special Litigation Section

/s/ *signature*

S. MEHVEEN RIAZ
DAVID G. COOPER
SURAJ KUMAR
LILY SAWYER-KAPLAN
AMY SENIER
HALEY VAN EREM
Trial Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-6255

*signature*

JESSICA R. C. MALLOY
CALESIA HENSON
Assistant United States Attorneys
Western District of Kentucky
717 West Broadway
Louisville, KY 40202
(502) 582-5911
Jessica.Malloy@usdoj.gov

*Attorneys for the United States*

MICHAEL J. O'CONNELL
Jefferson County Attorney

<u>*Annale R. Taylor*</u> (signed with permission)
ANNALE R. TAYLOR
ANDREW MILLER
ERIN C. FARNHAM
LISA S. JARRETT
Assistant Jefferson County Attorneys
First Trust Centre
200 S. 5th Street, Suite 300N
Louisville, KY 40202

*Attorneys for Louisville/Jefferson County Metro Government*