**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 3:24-cv-722-BJB |
| LOUISVILLE JEFFERSON COUNTY METRO GOVERNMENT, | |
| Defendant. | |

**MOTION FOR PERMISSION TO FILE SUPPLEMENTAL AMICUS BRIEF IN SUPPORT OF PARTIES' JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Pursuant to the Court's notice permitting *amici curiae* to request leave to file a supplemental brief responding to the Court's Order of January 18, 2025, *amici curiae* Chief Chris Burbank, Dr. Michael Hogan, Dr. Danna Mauch, Dr. Anthony Zipple, , Martha Knisley, Center for Policing Equity, National Alliance for Mental Illness (NAMI), NAMI Kentucky, NAMI Louisville, Mental Health America, Mental Health America of Kentucky, Kentucky Mental Health Coalition, the Judge David L. Bazelon Center for Mental Health Law, Center for Public Representation, Wellspring, Bridgehaven, St. John Center, Louisville Coalition for the Homeless, and Kentucky Protection and Advocacy respectfully seek permission from this Court to file a supplemental brief of no more than five pages, along with an affidavit from retired Police Chief Chris Burbank, who served for 19 years in leadership roles for the Major Cities Chiefs Association, an assembly of the 75 largest policing agencies in the United States and Canada, responding to the Court's two questions related to the Americans with Disabilities Act (ADA). The Court permitted these *amici* to file a brief in support of the Consent Decree and to appear and argue at the January 13, 2025 hearing to present their unique expertise and experience

regarding the Decree's treatment of people with mental disabilities. As described below they will provide similar expertise and insight if permitted to file a supplemental amicus brief with respect to the Court's two ADA-related questions. Neither Plaintiff United States of America nor Defendant Louisville Metro have objections to the filing of the supplemental brief.

## NATURE OF MOVANTS' INTEREST

As noted in their original motion for permission to submit a brief *amici curiae*, Movants are national disability, mental health, and policing experts, several of the largest national mental health family and professional organizations, local and national organizations that provide services to Louisville residents with mental disabilities, and public health and disability advocacy organizations that work on behalf of millions of adults and children with mental disabilities. They seek leave to participate as *amici* for this supplemental briefing, as for the original brief that the Court accepted, because they have unique and extensive experience and knowledge of best practices for the dispatching of public safety responses and mental health responses, and as such will be able to provide the Court with helpful information on how dispatchers facing similar issues have successfully addressed ensuring that appropriate emergency responses are provided to people with mental disabilities while continuing to ensure that public safety goals are served. Certain movants are also leaders in the development of the ADA and its amendments. That knowledge and experience could be helpful to the court as it looks to consider the legal standard required to meet the "reasonable accommodation" requirements of the ADA.

*Amici's* particular interests were described in their original motion for permission to appear, and are reproduced in Appendix A to this motion for the Court's convenience.

## IDENTIFICATION OF PARTY SUPPORTED

The proposed supplemental brief would support both parties' Joint Motion to Enter the Consent Decree.

## REASONS WHY THE *AMICUS* FILING IS DESIRABLE

The *amici curiae* were previously permitted leave to file briefing in this matter and to appear at the January 13, 2025 hearing, and now request leave to provide supplemental briefing of no more than five pages, along with an affidavit from one *amicus* with extensive knowledge of policing and 911 dispatch practices, pursuant to the Court's notice of January 30, 2025. *Amici curiae* intend to provide supplemental briefing that is directly responsive to the two specific questions related to the ADA posed in the Court's Order of January 18, 2025: asked—"How will dispatchers and officers determine whether a 911 call requires a police response, a mental-health response, or both?" and "What legal standard determines whether 'deflection' of 911 calls to a behavioral-health response team are 'reasonable accommodations' required by the ADA"? Notably, these two questions, unlike the others presented in the Court's order of December 28, 2024, do not seek information about the Consent Decree and the DOJ investigation that led to it that is solely within the control of the parties, but more broadly asks questions on which *amici*'s broad experience could be helpful.

Whether to permit *amicus* participation is within the discretion of the court. *See Faller v. United States Dep't of Justice*, No. 3:23-cv-526-BJB, 2024 WL 4369902, *7 (W.D. Ky. Sept. 30, 2024) (Beaton, J.); *see also United States v. Michigan*, 940 F.2d 143, 165 (6th Cir. 1991). District courts "consider the timeliness and usefulness of the brief," when determining whether to allow such participation. *Id.* Permitting the participation of "amici curiae is appropriate if the proffered information 'aid[s] the Court in resolving doubtful issues of law rather than present[s]

3

a partisan view of the facts.'" *D&B Truck and Equipment Sales, LLC v. United States*, No. 117-cv-00045-GNSHBB, 2017 WL 11837684 (W.D. Ky. Dec. 4, 2017) (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, No. 3:17-cv-16-DJH, 2017 WL 4288906, a *3 n.4 (W.D. Ky. Sept. 27, 2017).

The proposed supplemental brief of *amici* here meets these criteria. *Amici* have special knowledge and experience that can aid the Court as it considers the questions concerning the ADA posed in its January 18, 2025 Order. *Amici* have decades-long experience and expertise in the area of behavioral health disabilities and have substantial expertise in providing behavioral health and emergency response services. If they are permitted to file the supplemental brief, *amici* hope to share that expertise with the Court, focusing on how other jurisdictions have successfully implemented policies and training programs that help ensure that dispatchers direct appropriate health-care based responses to individuals experiencing behavioral health emergencies consistent with public safety concerns, to help the Court answer the question it posed about whether and when a response should be led by police or behavioral-health professionals, or both.

In particular, *amici* intend to submit an affidavit based upon personal and institutional experience regarding delivering emergency services to individuals experiencing behavioral health emergencies. The affidavit explains how, in other jurisdictions, local actors have been able to address dispatch training and services in a way that ensures people experiencing behavioral health emergencies receive appropriate health care while also addressing public safety needs—consistent with the Consent Decree's goal for Louisville Metro to provide "an emergency response to people with behavioral health needs that includes the most behavioral health-involved and least police-involved response appropriate and consistent with public safety" to

4

meet the reasonable accommodation requirement of the ADA. *See* Cons. Dec. ¶ 307. Further, *amici* have personal experience with and will provide research showing that the public safety concerns involved in responding to behavioral health emergencies are similar to the public safety concerns involved in other types of health emergencies, and that emergency dispatch services are well-equipped to make these determinations consistent with the Decree's requirements while still ensuring public safety.

*Amici* also include the three preeminent national mental health organizations in the United States, each of which have had a role in the shaping of mental health policy across the country. This includes *amici*'s extensive involvement in working with policymakers on the amendments to the ADA. *Amici* hope to use the supplemental briefing to share that expertise with the Court as it considers its second question, the legal standard that determines whether the deflection of emergency calls to a behavioral-health response team are "reasonable accommodations" required under the ADA.

Further, *amici*'s supplemental brief meets the requirement of the Sixth Circuit and its district courts to "provide impartial information" to the Court. *Michigan*, 940 F.2d at 164. *Amici*'s supplemental brief is in support of both parties' Joint Motion for Entry of Consent Decree. The proposed supplemental brief focuses solely on the two questions presented by the Court in its January 18, 2025 Order, and *amici* request permission to file a supplemental brief of up to five pages, along with an affidavit from one amicus, to answer the Court's questions.

## POSITION OF EACH PARTY REGARDING THE PROPOSED BRIEF

Neither Plaintiff United States of America nor Defendant Louisville Metro have objections to the filing of the supplemental brief.

## CONCLUSION

For the reasons stated, *amici* respectfully request that the Court enter the attached proposed order permitting the proposed supplemental brief to be filed and allow *amici* to file a supplemental brief of up to five pages with an accompanying affidavit.

Dated: February 11, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Jennifer L. Brumfield*

312 Walnut Street
Suite 3200
Cincinnati, OH 45202
Telephone: (513) 878.4428
Email: jbrumfield@bakerlaw.com

Elizabeth B. McCallum (*pro hac vice*)
Lindsey N. Simmons (*pro hac vice*)
Orga Cadet (*pro hac vice*)
Daniel P. Wicklund (*pro hac vice*)
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 861.1500
Facsimile: (202) 861.1783
Email: emccallum@bakerlaw.com
       lsimmons@bakerlaw.com
       ocadet@bakerlaw.com
       dwicklund@bakerlaw.com

THE JUDGE DAVID L. BAZELON CENTER
FOR MENTAL HEALTH LAW

Megan E. Schuller (*pro hac vice*)
Ira Burnim (*pro hac vice*)
1090 Vermont Avenue NW, Suite 220
Washington DC 20005
Telephone: (202) 467.5730
Email: megans@bazelon.org
       irab@bazelon.org

CENTER FOR PUBLIC REPRESENTATION

Steven J. Schwartz (*pro hac vice*)
Mona Igram (*pro hac vice*)
5 Ferry Street, #314
Easthampton, MA 01027
Telephone: (413) 586-6024
Email: sschwartz@cpr-ma.org
migram@cpr-ma.org

*Attorneys for Movants and Amici Curiae Chief Chris Burbank, Dr. Michael Hogan, Dr. Danna Mauch, Dr. Anthony Zipple, Martha Knisley, Center for Policy Equity, National Alliance for Mental Illness (NAMI), NAMI Kentucky, NAMI Louisville, Mental Health America, Mental Health America of Kentucky, Kentucky Mental Health Coalition, Judge David L. Bazelon Center for Mental Health Law, Center for Public Representation, Wellspring, Bridgehaven, St. John Center, Louisville Coalition for the Homeless, Kentucky Protection & Advocacy*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February 2025, I filed a copy of the foregoing, which will electronically serve all counsel of record who have entered an appearance in the case.

By: */s/ Jennifer L. Brumfield*

Jennifer L. Brumfield

BAKER & HOSTETLER LLP
312 Walnut Street
Suite 3200
Cincinnati, OH 45202
Telephone: (513) 878.4428
Email: jbrumfield@bakerlaw.com

## APPENDIX A: INDIVIDUAL AMICI

**Chief Chris Burbank**

Chief Chris Burbank served with the Salt Lake City Police Department from 1991 until 2015, and served for nine years as the 45th Chief of the department. Chief Burbank was Vice President of the Major Cities Chiefs Association, an assembly of the 75 largest policing agencies in the United States and Canada, for four years and served on the Board for 15 years. In 2014, Chris was selected as one of the 50 most influential leaders in the State of Utah, and was chosen by the Salt Lake Tribune as Utahn of the Year for 2011. He has a degree from the University of Utah and is a graduate of the FBI's National Executive Institute.

**Dr. Michael Hogan**

Dr. Michael Hogan chaired the President's New Freedom Commission on Mental Health from 2002 to 2003 under President George W. Bush. He was appointed as the Special Master in *United States v. Mississippi* to draft a remedial plan that would correct violations of the ADA in the state's behavioral health system. Previously, Dr. Hogan served as New York State Commissioner of Mental Health from 2007-2012; as the Director of the Ohio Department of Mental Health from 1991 to 2007, and as the Commissioner of the Connecticut DMH from 1987 to 1991. From 1994 to 1998, he served on NIMH's National Advisory Mental Health Council, as President of the National Association of State Mental Health Program Directors (NASMHPD) (2003-2005) and as Board President of NASMHPD's Research Institute (1989-2000).

**Dr. Danna Mauch**

Dr. Danna Mauch was the former director of the Department of Mental Health and Substance Abuse for the State of Rhode Island, and the assistant director of the Department of Mental Health in the Commonwealth of Massachusetts. She served as the Special Master in *Dixon v. District of Columbia*, overseeing the court's remedial order concerning the DC mental

9

health system. She currently is the court monitor in *Trueblood v. Washington Dept of Social and Health Services*, assisting the federal judge to oversee its remedial plan for people with mental illness involved in the criminal justice system in the State of Washington. Previously, Dr. Mauch was a Senior Fellow/Principal at Abt Associates, Inc.; the Chief Administrative Officer for Comprehensive NeuroScience; Founding President and Chief Executive Officer for Magellan Public Solutions; Founder and President of Integrated Health Strategies; Homelessness Policy Project Director at the Massachusetts Association for Mental Health; and Executive Director of Cambridge Somerville Community Residences.

**Dr. Anthony Zipple**

Dr. Zipple served as the President and Chief Executive Officer for Centerstone of Kentucky (CKY), in Louisville, Kentucky, one of the largest behavior health organizations in Kentucky. CKY employed more than 1,800 staff and served more than 36,000 persons with behavioral health conditions each year. Dr. Zipple successfully led the merger with Uspiritus, as well as a successful affiliation with Centerstone of America, which resulted in creating the largest non-profit community behavioral health company in the United States. Previously, Dr. Zipple was the Chief Executive Officer for Thresholds, in Chicago, Illinois. Dr. Zipple developed and expanded the use of high fidelity, evidence-based practices including dual disorders treatment, supported employment, wellness management and recovery, smoking cessation, and assertive community treatment. Prior to Thresholds, Dr. Zipple served as the Chief Operating Officer for Vinfen in Cambridge, Massachusetts, which is the largest non-profit behavioral health provider in Massachusetts.

**Martha Knisley**

Martha Knisley has served for more than forty years in various roles in mental health service systems, including as mental health commissioner of Ohio, Pennsylvania, and the District of Columbia. She has served as a court monitor and assisted other court monitors overseeing implementation of a number of court orders and settlement agreements in Olmstead cases, including in North Carolina, Georgia, and New York. As a consultant with the Technical Assistance Collaborative, Ms. Knisley worked with states across the country to redesign mental health services and housing. She brings deep expertise in transforming mental health service systems including leveraging key housing programs and funding streams. She has worked with states to expand housing opportunities for justice-involved individuals with mental illness. Ms. Knisley is an Independent Reviewer in *United States v. North Carolina* Olmstead settlement agreement.

### Center for Policing Equity

Center for Policing Equity (CPE) is a research and action organization that uses science to identify and reduce the causes of racial disparities in public safety. CPE works with law enforcement agencies and local governments across the country to analyze racial disparities and recommend changes in policies and practices that address those disparities.

### National Alliance for Mental Illness

National Alliance on Mental Illness ("NAMI") is the nation's largest grassroots mental health organization, dedicated to building better lives for the millions of Americans affected by mental illness. NAMI is an alliance of more than 650 affiliate organizations that work in communities across the country to provide advocacy, education, support and public awareness. This Alliance has a long history of working to decriminalize mental illness, improve crisis

response, and ensure that people with mental health conditions are connected to the care they need in the community.

### NAMI Kentucky

National Alliance on Mental Illness Kentucky ("NAMI Kentucky") is the state organization of the National Alliance on Mental Illness ("NAMI") serving the state of Kentucky. Along with more than 650 affiliate organizations in the NAMI Alliance, NAMI Kentucky makes up the nation's largest grassroots mental health organization that serves communities across the country. NAMI Kentucky is dedicated to building better lives for the people of Kentucky affected by mental illness. As part of the work of the Alliance, NAMI Kentucky has a long history of working to decriminalize mental illness, improve crisis response, and ensure that people with mental health conditions are connected to the care they need in the community.

### NAMI Louisville

NAMI of Louisville was founded in 1979.  It provides services to persons living with mental illness, their families, and the Louisville community.  NAMI Louisville is dedicated to educating consumers, family members, professionals, and the general public to dispel myths and misperceptions about mental illness. Our programs and services are aimed toward eradicating the stigma of mental illness, enhancing the hope of recovery, and improving the quality of life for those in the Louisville area whose lives are affected by serious mental illness.

NAMI Louisville has been deeply engaged in Louisville Metro Government's police practices.  We have been instrumental in initiating the CIT training for police officers in Jefferson County since its inception. We provide training of LMPD officers aimed at understanding a mental health crisis when encountered, the need for family involvement and making sure the individual is transported to appropriate resources for care. NAMI Louisville has

expressed our concerns about the emergency response system for adults with mental illness and work with community partners for behavioral health crisis stabilization.

### Mental Health America

Mental Health America, founded in 1909, is a national community-based non-profit dedicated to addressing the needs of those living with mental illness and promoting the mental health of all. MHA works to ensure that police practices, and responses to mental health emergencies, are appropriate, respectfully, effective, and reflect best practices for engaging with people with mental illness.

### Mental Health America of Kentucky

Mental Health America of Kentucky is a 501(c)(3) organization, established in 1951. Our mission is to improve the accessibility and quality of mental health and substance abuse services through advocacy with local, state and federal policymakers, education of the public on mental illness and mental wellness, and the promotion of research-based practices among providers.

### Kentucky Mental Health Coalition

Since 1982, the KY Mental Health Coalition (KMHC) and its 80 member organizations have brought together the voices of consumers, family members, advocates and providers to educate the public and to engage policymakers. KMHC has focused on stopping the revolving door of hospitalizations, incarcerations and homelessness experienced by those with SMI. Our advocacy has also centered around the development and implementation of a Medicaid Waiver for individuals with SMI to provide supporting housing and supported employment. KMHC has long been concerned with police responses to people with mental illness, and has also been very engaged in the development of the Medicaid ReEntry Waiver, designed to provide treatment to

individuals with SUD and mental health issues while incarcerated and immediately connecting them with services once they reenter their community.

### Judge David L. Bazelon Center for Mental Health Law

Since 1972, the Judge David L. Bazelon Center for Mental Health Law (the "Bazelon Center") has advocated for the civil rights, full inclusion, and equality of adults and children with mental disabilities. The Bazelon Center was instrumental in the passage of the ADA and played a key role in numerous cases reforming service systems for people with mental health disabilities. The Center has conducted extensive research on mental health emergency response systems across the country and provides technical assistance to jurisdictions on the requirements of the ADA and how to provide effective, nondiscriminatory, community-based mental health services, including mobile crisis services, to adults and children with mental health disabilities.

### Center for Public Representation

The Center for Public Representation is a public interest law firm that has been assisting people with disabilities for almost fifty years. It is both a statewide and national legal backup center to the federally-funded protection and advocacy agencies in each of the fifty States. It has litigated systemic cases on behalf of person with disabilities in more than twenty states, and authored *amici* briefs to the United States Supreme Court and many the courts of appeals, in order to enforce the constitutional and statutory rights of persons with disabilities, including the right to be free from discrimination under the ADA and to receive appropriate treatment and support in the community. CPR's police violence initiative focuses on strategies to ensure that emergency response systems and police departments respond to people with disabilities in a nondiscriminatory and effective manner.

### Wellspring

Wellspring, Inc., a non-profit organization based in Louisville, KY, has been providing supportive housing and behavioral health services for adults with serious mental illness in Louisville, KY since 1982. The organization serves approximately 1600 adults annually through a variety of programming including supportive housing, affordable housing, residential crisis units, Assertive Community Treatment, outpatient, case management and peer support services. Many programs are explicitly designated for homeless adults with serious mental illness, many of whom have co-occurring substance use and other disorders.

**Bridgehaven**

Bridgehaven's Psychiatric Rehab program uses evidence-based interventions to help individuals with severe and persistent mental health problems find successful roles in their community. We help members develop the insights and skills they need to have successful roles in their schools, with employers, in their living environment, or socially with others in the community. Licensed therapists meet with each individual member at Bridgehaven to help them design a plan of care. They create a schedule of therapeutic groups and activities where the member is encouraged to think, examine and change behaviors to overcome their own personal barriers to recovery. Bridgehaven provides a 24-hour crisis line for our members.

**St. John Center**

St. John Center is a nonprofit organization dedicated to providing resources, support, and advocacy for individuals experiencing homelessness in Louisville, KY. Through our Day Shelter, Permanent Supportive Housing, and Outreach programs, we serve thousands of individuals annually, many of whom face significant barriers such as mental health challenges and substance use disorders. Our staff and leadership have extensive experience working alongside individuals with behavioral health disabilities, connecting them to critical services, and

advocating for systems that prioritize safety, dignity, and recovery. We believe in the importance of addressing police responses to individuals with behavioral health needs to ensure outcomes that are equitable, humane, and focused on long-term stability.

### Louisville Coalition for the Homeless

In 1984, citizens and officials of the city of Louisville sought a coordinated community response to homelessness. The grassroots initiative was sparked by two associate priests from the Cathedral of the Assumption and Christ Church Cathedral. Witnessing countless numbers of people in need and people who had died on the streets, concerned citizens convinced the mayor, Harvey Sloane, to establish a community-wide task force to examine the issue of homelessness. The task force became the Coalition for the Homeless in 1986.  Since our inception, the Coalition for the Homeless has been a leader in addressing homelessness locally.

Because housing is a human right, the Coalition for the Homeless' mission of is to prevent and end homelessness in Louisville through advocacy, education, and the coordination of our member agencies.  Today, the Coalition has over 40 member agencies who provide shelter, housing, healthcare, food, outreach, and more. Our job is to educate the public about the face of homelessness; advocate for change; and coordinate the work of our partners by filling gaps in services and leveraging resources.

### Kentucky Protection and Advocacy

Kentucky Protection & Advocacy (Kentucky P&A) is an independent state agency designated by the Kentucky Governor as the protection and advocacy system under federal law for people with disabilities in Kentucky. KRS 31.010(2); KRS 31.030(7). The mission of Kentucky P&A is to advocate for the human, civil, and legal rights of people with disabilities in Kentucky.  Kentucky P&A investigates abuse, neglect and rights violations affecting people with

disabilities; pursues administrative, legal, and policy remedies to address identified violations; and advocates for individuals in many areas of disability rights, special education, and other civil rights.

Kentucky P&A has advocated for individuals with disabilities within the criminal justice system, including their interactions with police and other first responders. We are a member of the Crisis Intervention Team (CIT) Advisory Committee.  The Consent Decree lists Kentucky P&A as a requested participant in the Behavioral Health Coordination and Oversight Council (BHCOC).